IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

MIA SCULLARK and             )
KATRINA PIPES,               )
                             )
    Plaintiffs,              )
                             )
vs.                          )        No. 13-2050-JDT-dkv
                             )
HSBC MORTGAGE SERVICES, INC.;)
MORTGAGE ELECTRONIC REGISTRATION )
SYSTEM; WILLIAM TIMOTHY HILL,)
as Substitute Trustee; TURNKEY )
MEMPHIS PROPERTIES, LLC; and )
JOHN DOES 1-20,              )
                             )
    Defendants.              )

_____

ORDER GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS*
AND
REPORT AND RECOMMENDATION OF DISMISSAL

_____

On January 25, 2013, the plaintiffs, Mia Scullark and Katrina Pipes, proceeding *pro se,* filed a Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 and a Complaint to Quiet Title, for Damages, for Legal and Equitable Relief (collectively referred to as "the complaint"), accompanied by a motion seeking leave to proceed *in forma pauperis* that was submitted only by Scullark. (Compl., D.E. 1, D.E. 1-1; Mot., D.E. 2.) The docket indicates that no civil filing fee has been paid in this action, but only Scullark signed the *in forma pauperis* affidavit. Scullark's affidavit satisfies her burden of demonstrating that

she is unable to pay the filing fee. Accordingly, the motion to proceed *in forma pauperis* is granted as to Scullark. Pipes, however, has neither paid the requisite filing fee nor applied for *in forma pauperis* status.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). This report and recommendation will constitute the court's screening of the complaint.

## I. PROPOSED FINDINGS OF FACT

This action arises from foreclosure of residential real property located at 4438 Northwood Hills, Memphis, Tennessee 38128 (the "Real Property"). (*See* Compl. D.E. 1 ¶¶ 4-5; D.E. 1-1 ¶¶ 11-12, 14, 18-19.) On August 7, 2006, Pipes purchased the Real Property and executed a deed of trust (the "Deed of Trust"), secured by a $145,000 promissory note executed the same day, to lender Decision One Mortgage Company, LLC ("Decision One"). (Compl., D.E. 1-1 ¶ 12.) On August 2, 2011, Pipes executed a quitclaim deed purporting to convey her interest in the Real Property to an entity named First Continental, but Pipes

2

continued to reside there after that date.[1]  (D.E. 1-1 ¶ 11.)
On February 20, 2012, Mortgage Electronic Registration Systems, Inc. ("MERS"), acting, purportedly, as "nominee" for Decision One, assigned the Deed of Trust to HSBC Mortgage Services, Inc. ("HSBC").  (D.E. 1-1 ¶ 13.)  William Timothy Hill ("Hill") was appointed as substitute trustee.  (D.E. 1-1 ¶ 14.)  Later, Hill, on behalf of HSBC, instituted foreclosure proceedings on the Real Property and sold it at public auction to Turnkey Memphis Properties, LLC ("Turnkey"), on September 18, 2012.  (D.E. 1-1 ¶ 18.)  Scullark filed the present suit on January 25, 2013, against HSBC, MERS, Hill, Turnkey, and "John Does 1 through 20" ("the Doe defendants"), seeking, *inter alia*, rescission of the foreclosure sale, declaratory relief in the form of correction of title, compensatory and punitive damages, and injunctive relief.

This is the second of two actions brought by Scullark in relation to and to forestall the foreclosure sale.  On September 18, 2012, Scullark filed a Complaint to Restrict and Prohibit Unlawful Sale of Real Property and Recording of a [sic] Unlawful Sale, to Order Accounting of Entitlement to Sale for Damages and for Legal and Equitable Relief in the Shelby County Chancery Court, against HSBC, MERS, and Hill, which was docketed as case number CH-12-1470-3 (the "state court lawsuit").  Scullark filed

---

[1] On September 17, 2012, First Continental, with which Scullark is associated, executed a quitclaim deed purporting to convey its interest in the Real Property to Scullark.

3

an amended complaint in the state court lawsuit against the same defendants plus Turnkey on October 22, 2012. The amended complaint, styled Complaint to Set Aside a Foreclosure Sale, to Order Accounting of Entitlement to Sale, for Damages and for Legal and Equitable Relief, alleged that HSBC was, through substitute-trustee Hill, effecting an "unlawful" foreclosure sale of the Real Property to Turnkey and sought to "[s]et aside the Foreclosure Sale" as well as injunctive relief to "preserve [the] property form [sic] a Fraudulent, Illegal transaction." (Compl., Chancery Court ¶¶ 5, 8.) The amended complaint also alleged that Scullark had suffered a deceptive practice under (presumably) the Tennessee Consumer Protection Act and had been the victim of identity theft under Tennessee Code Annotated 39-14-150, (*id.* ¶¶ 3-4) and sought compensatory damages, (*id.* at 3).

On October 29, 2012, MERS and HSMC filed a motion to dismiss Scullark's complaint (later supplemented to seek dismissal of the amended complaint) in the state court lawsuit for failure to provide a short and plain statement of her claims showing an entitlement to relief, to state a claim for injunctive relief, and to plead with particularity the circumstances constituting fraud. Hill filed his own motion to dismiss on November 13, 2012, citing substantially similar grounds for dismissal. In an order dated December 21, 2012, Chancellor Kenny Armstrong granted Hill's motion to dismiss, finding that Scullark's amended

4

complaint "fail[ed] to state a cause of action against [Hill]." Then, on January 18, 2013, Chancellor Armstrong entered an order dismissing with prejudice the entirety of Scullark's case against the remaining defendants.

Despite being more than forty pages in length, Scullark's complaint in the present federal lawsuit is vague and difficult to decipher.[2] It includes scattered references to various federal statutes (or at least what purport to be federal statutes), including: (1) the Truth in Lending Act ("TILA"), specifically 15 U.S.C. §§ 1635(a), 1638, and 1640; (2) "the Foreclosure Act," which the court presumes is a reference to the Protecting Tenants at Foreclosure Act, codified at 12 U.S.C. § 5220; (3) the Uniform Commercial Code, namely "UCC Article 3 Negotiable Instruments," specifically UCC § 3-305(a), and "Article 8 Investments Securities," without further citation or elaboration; (4) "the FDCA," which the court presumes is a reference to the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 U.S.C. § 1692–1692p; (5) "Federal Home Loan

---

[2] The complaint is obviously an incorporation of various form complaints used by other *pro se* plaintiffs in this district in similar lawsuits. The complaint refers to the laws of other states, (*see, e.g.*, ¶ 93), and contains incorrect subject-verb agreement throughout as though a singular "plaintiff" was merely replaced with "plaintiffs" without further alteration (*see, e.g.*, ¶¶ 20–21, 62). Indeed, paragraphs 23 through 96 of Scullark's complaint in this case are nearly identical to the complaint that was filed in *Nooh v. Recontruct Co.*, No. 11-2506-STA-dkv (W.D. Tenn. June 20, 2011), ECF No. 1 (dismissed Mar. 29, 2012).

5

Mortgage Corporation Act.1," without citation or elaboration; (6) the Real Estate Settlement Procedures Act of 1974 ("RESPA"), without citation or elaboration; (7) "the National Currency Act which is expressed as prima facie Law under the United States Code Title 12 Banks and Banking," without further citation or elaboration; (8) and "the Statues at Large Public Law 13 of the 38th congress Stat 99-118," without further citation or elaboration. The complaint also references the following state statutory provisions: (1) Tenn. Code Ann. § 35-5-117(c)(1), which the court notes has been repealed; (2) Tenn. Code Ann. § 39-14-150, which concerns the crime of identity theft; (3) Tenn. Code Ann. § 47-25-106, the remedial section of Tennessee's antitrust law; (4) the Tennessee Consumer Protection Act ("TCPA"), specifically Tenn. Code Ann. §§ 47-18-108 and -109; (5) Tenn. Code Ann. § 36-5-101, which the court notes is a statute pertaining to alimony and child support; (6) the Tennessee Deceptive and Unfair Trade Practices Act ("TDUTPA"); (7) Tenn. Code Ann. § 39-13-302, which concerns the crime of false imprisonment; (8) Tenn. Code Ann. § 39-14-103, which concerns the crime of theft; (9) Tennessee's Racketeer Influenced and Corrupt Organization Act of 1989, codified at Tenn. Code Ann. §§ 39-12-201 *et seq.* Save a single instance or two, the complaint does not actually assert a discernable claim under any of these statutes, federal or state. The complaint also mentions several

6

common-law causes of action, including fraud, misrepresentation, slander of title, wrongful foreclosure, unlawful interference with possessory interest, conflict of interest, tortious interference with contract rights, and negligent infliction of emotional distress, and it asserts that "Federal Reserve Notes are not money by law" and that the defendants lack standing to foreclose.

## II. PROPOSED CONCLUSIONS OF LAW

A federal court exercising its diversity jurisdiction applies the choice of law rules of the forum state, in this case, Tennessee. *Pedicini v. Life Ins. Co. of Ala.*, 682 F.3d 522, 526 (6th Cir. 2012); *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 303 n.4 (6th Cir. 2011); *Montgomery v. Wyeth*, 580 F.3d 455, 459 (Tenn. 2009). "Generally, Tennessee follows the rule of *lex loci contractus*, meaning that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent, including a valid choice of law provision in the parties' contract." *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 823 F. Supp. 2d 786, 801 (W.D. Tenn. 2011)(internal quotation marks & footnote omitted). The court will apply Tennessee substantive law in this case.

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and

7

directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. United States*, 440 U.S. 147, 153 (1979)(internal quotation marks, ellipses & citation omitted).

The federal courts generally have also consistently accorded preclusive effect to issues decided by state courts. Thus, res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system. *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980). Thus, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Id.* at 96; *see* also 28 U.S.C. § 1738.

The Tennessee Court of Appeals has explained the distinction between collateral estoppel and res judicata:

> Collateral estoppel and res judicata are related doctrines; however, they operate in separate ways to prevent inconsistent judicial decisions. Res judicata is said to act "like a bludgeon, indiscriminately smashing all efforts of a party to relitigate events that have already been litigated and decided in a prior suit." Joseph W. Glannon, *Civil Procedure: Examples and Explanations* 485 (4th ed. 2001). Collateral estoppel, on the other hand, "operates like a scalpel, dissecting a lawsuit into its various issues and surgically removing from reconsideration any that have been properly decided in a prior action." *Id.*

> Res judicata serves to preclude *claims* that have once been litigated or could have been litigated. 22 *Tenn. Juris., Res Judicata* § 2 (2007). "Claim" is defined to include all rights arising out of a single transaction. *Glannon*, at 487 (citing Restatement (Second) of Judgments § 24 (1982)). Collateral estoppel, on the other hand, is an *issue* preclusion doctrine.

*Hill v. Doe*, No. M2007-01139-COA-R3-CV, 2008 WL 2600699, at *2 (Tenn. Ct. App. June 30, 2008)(emphasis in original); *accord Allen*, 449 U.S. at 94 ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.")(internal citations omitted).

The doctrine of res judicata, or claim preclusion, "bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit." *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998); *accord Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). "The principle of claim preclusion

9

prevents parties from splitting their cause of action and requires parties to raise in a single lawsuit all the grounds for recovery arising from a single transaction or series of transactions that can be brought together." *Lien*, 993 S.W.3d at 56. In Tennessee,

> [p]arties asserting a res judicata defense must demonstrate that (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) the same parties or their privies were involved in both proceedings, and (4) both proceedings involved the same cause of action.

*Id.*

The decision of the Shelby County Chancery Court in the state court lawsuit is entitled to res judicata effect. First, the Chancery Court is a court of competent jurisdiction. Under Tennessee law, with certain exceptions not applicable here, "[t]he chancery court has concurrent jurisdiction, with the circuit court, of all civil causes of action, triable in the circuit court." Tenn. Code Ann. § 16-11-102.

Second, the dismissal of the state court lawsuit was a final decision on the merits. "A judgment is final in Tennessee when it decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court." *Creech v. Addington*, 281 S.W.3d 363, 377 (Tenn. 2009)(internal quotation marks, emphasis & citation omitted). "As a general rule, a trial court's judgment becomes final thirty days after its entry unless

a party files a timely notice of appeal or specified post-trial motion." *Id.* The order issued by the Chancery Court on January 18, 2013, states that Scullark's "Complaint and any and all amendments to said complaints should be dismissed in their entirety, with prejudice, to the re-filing of same." Because Scullark did not appeal, that decision became final thirty days after entry.

"In Tennessee, any dismissal of a claim other than a dismissal for lack of jurisdiction, for lack of venue, or for lack of an indispensable party operates as an adjudication upon the merits, unless the trial court specifies otherwise in its order for dismissal." *Creech*, 281 S.W.3d at 378 (internal quotation marks & citation omitted). The December 21, 2012 dismissal of the case against Hill was for failure to state a cause of action, which is an adjudication on the merits. *Id.* The January 18, 2013 order dismissing the remainder of the case does not expressly state the grounds for dismissal, but this court presumes that that dismissal, which was pursuant to the motion of HSBC and MERS, was based on one or more of the grounds cited in HSBC's and MERS's motion to dismiss. Dismissal on any or all of those grounds—failure to provide a short and plain statement of her claims showing an entitlement to relief, failure to state a claim for injunctive relief, and failure to plead with

particularity the circumstances constituting fraud—would constitute an adjudication on the merits.

The third requirement is also satisfied. With the exception of the twenty unnamed defendants, all the defendants in the present federal court lawsuit were parties to the state court lawsuit.[3]

As to the final requirement, Tennessee has adopted the "transactional standard" for determining whether a prior judgment and a pending suit are the same cause of action for purposes of applying res judicata. *Creech*, 281 S.W.3d at 380-81 (Tenn. 2009). Under that standard, "[t]wo suits . . . shall be deemed the same 'cause of action' for purposes of res judicata where they arise out of the same transaction or a series of connected transactions." *Id.* at 381. In this case, both the state court lawsuit and the instant federal lawsuit arise out of the same transaction or series of connected transactions — namely, the series of transactions among Pipes, Decision One, MERS, HSBC and Scullark pertaining to the Real Property.

It appears that Scullark, discontented with the dismissal of her state court lawsuit, is merely using the present suit to

---
[3] Service of process cannot be made on unnamed or fictitious parties. The filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitations against those parties. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). Accordingly, it is recommended that the complaint be dismissed against the John Doe defendants.

relitigate that action. Accordingly, this court recommends dismissal of the complaint in this lawsuit as barred by the doctrine of res judicata.[4]

---

[4]

The weight of authority supports dismissal for failure to state a claim when a case is barred by the doctrine of res judicata. *See Thompson v. U.S., Small Bus. Admin.*, 8 Fed. App'x 547, 549 (6th Cir. 2001)(affirming failure-to-state-a-claim dismissal that was based on res judicata); *Johnson v. Johnson*, 940 F.2d 660 (6th Cir. 1991))(unpublished table decision)(same); *Link v. Sumner Cnty. Jail*, 3:10-CV-0236, 2010 WL 1138029, at *2 (M.D. Tenn. Mar. 19, 2010)("Because the plaintiff's claims are barred by the doctrine of *res judicata*, the Court finds that the plaintiff's complaint fails to state a claim upon which relief can be granted.").

Also, the issue of res judicata need not be raised in a motion in order for the court to address it, and it can be cause for dismissal based on failure to state a claim pursuant to initial screening under 28 U.S.C. § 1915(e). *See Murray v. Reed*, 69 Fed. App'x 246, 247 (6th Cir. 2003)(affirming district court's dismissal of complaint upon initial screening based on frivolousness and failure to state a claim under the principle of res judicata); *Skudnov v. Hous. Auth. of Bowling Green*, 1:07CV-149-R, 2007 WL 2915179, at *3 (W.D. Ky. Oct. 5, 2007)("In the present action, Plaintiff is simply trying to re-litigate claims that he lost as part of his 2005 action. As such, this action is barred by the doctrine of res judicata, and therefore, must be dismissed as legally frivolous and for failure to state a claim upon which relief may be granted."); *cf. Holloway Const. Co. v. U.S. Dep't of Labor*, 891 F.2d 1211, 1212 (6th Cir. 1989)(stating that a district court is "empowered to raise res judicata *sua sponte*" and "may invoke the doctrine of res judicata in the interests of, inter alia, the promotion of judicial economy").

13

III.  RECOMMENDATION

For the foregoing reasons, it is recommended that the complaint be dismissed for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. 1915(e)(2)(B)(ii).[5]

Respectfully submitted this 15th day of May, 2013.

>  s/ Diane K. Vescovo
> Diane K. Vescovo
> United States Magistrate Judge

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  FED. R. CIV. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.

---

[5] In addition, according to the factual allegations in the complaint, Pipes has no interest any longer in the Real Property. Therefore, in addition to the grounds set forth herein, the complaint fails to state a claim by Pipes upon which relief can be granted, and it is recommended that Pipes's complaint be dismissed on this basis as well.